ACCEPTED
03-14-00658-CV
3893107
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/26/2015 10:47:09 AM
JEFFREY D. KYLE
CLERK

*Oral Argument Conditionally Requested*

# NO. 03-14-00658-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/26/2015 10:47:09 AM
JEFFREY D. KYLE
Clerk

## In The
## Third Court of Appeals

_____

**ROBYN N. JONES,**

*Appellant,*

**v.**

**WELLS FARGO BANK, N.A.,**

*Appellee.*

_____

Cause No. 11-0479
On Appeal from the 428th District Court, Hays County, Texas
Honorable Bill Henry, Judge Presiding

_____

### APPELLEE'S BRIEF
_____

B. David L. Foster
  State Bar No. 24031555
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas  78701
Telephone:  (512) 305-4715
Facsimile:  (512) 391-4722

W. Scott Hastings
  State Bar No. 24002241
Robert T. Mowrey
  State Bar No. 14607500
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800

*Counsel for Appellee*

# TABLE OF CONTENTS

STATEMENT OF THE CASE ............................................................................... 1

ISSUE PRESENTED ......................................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF FACTS ................................................................................ 2

SUMMARY OF THE ARGUMENT ................................................................. 5

ARGUMENT .................................................................................................. 6

      A.     Under Texas Law, Jones Had No Right to Force Wells Fargo to Accept Her as the Principal Obligor on the Loan. ............................................................................................ 6

      B.     The Deed of Trust Does Not Compel Wells Fargo to Approve an Assumption. ..................................................... 11

      C.     Wells Fargo's Right to Accept or Reject an Assumption of the Debt By Jones Is Not Impaired by the Federal Garn-St. Germain Act. ........................................................ 17

CONCLUSION AND PRAYER ..................................................................... 24

CERTIFICATE OF COMPLIANCE .............................................................. 26

CERTIFICATE OF SERVICE ....................................................................... 26

# INDEX OF AUTHORITIES

**CASES**

*Ashby v. Wells Fargo Bank, N.A.*,
No. 12-803, 2012 WL 1833932 (S.D. Tex. May 18, 2012)..........................................16

*Brannin v. Richardson*,
185 S.W. 562 (Tex. 1916) ....................................................................................10, 11

*In re Cady*,
440 B.R. 16 (N.D.N.Y. 2010) ...................................................................................20

*Cain v. Bank United of Tex.*,
No. 14-95-00601-CV, 1997 WL 428054 (Tex. App.—Houston [14th
Dist.] July 31, 1997, pet. denied) ...............................................................................9

*Cronin v. Wells Fargo Bank, N.A.*,
No. 03-12-00799-CV, 2014 WL 2918006 (Tex App.—Austin June 19,
2014, no pet.) (mem. op.)...........................................................................................15

*DTND Sierra Invs. LLC v. CitiMortgage, Inc.*,
No. SA-12-CV-80-XR, 2012 WL 1711738 (W.D. Tex. May 15, 2012) ...........16

*In re FH Partners, L.L.C.*,
335 S.W.3d 752 (Tex. App.—Austin 2011, orig. proceeding) ..........12, 13, 14, 15

*Helge v. Am. Cent. Life Ins. Co.*,
124 S.W.2d 191 (Tex. Civ. App.—Austin 1938, writ dism'd judgm't
cor.).............................................................................................................................8

*In re Henderson*,
No. 04-B-75636, 2005 Bankr. LEXIS 1474 (Bankr. N.D. Ill. May 17,
2005)..........................................................................................................................23

*Howell v. Murray Mortgage Co.*,
890 S.W.2d 78 (Tex. App.—Amarillo 1994, writ denied) .............................16, 17

*In re Jordan*,
199 B.R. 68 (Bankr. S.D. Fla. 1996) .............................................19, 20, 21, 22, 23

*La-Rey, Inc. v. Kowalski*,
433 S.W.2d 530 (Tex. Civ. App.—San Antonio 1968, no writ)...........................7

iii

*In re Lumpkin*,
  144 B.R. 240 (Bankr. D. Conn. 1992)................................................................ 20

*Marler v. Parker*,
  135 So. 400 (Fla. 1931)............................................................................... 20, 21

*Monroe v. Salter*,
  No. 05-94-01560-CV, 1995 WL 447549 (Tex. App.—Dallas July 27,
  1995, no writ) ............................................................................................... 9

*Pinckney v. Wylie*,
  86 F.2d 541 (5th Cir. 1936) ........................................................................... 8

*Preston v. Seterus*,
  931 F. Supp. 743 (N.D. Tex. 2013) .............................................................. 16

*Proctor v. Hearne*,
  131 So. 173 (Fla. 1930)............................................................................... 20, 21

*Puntarelli v. Peterson*,
  405 S.W.3d 131 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ............... 10

*Romund v. Ginzel*,
  259 S.W.2d 619 (Tex. Civ. App.—Waco 1953, no writ) ............................ 14

*Shockey v. Page*,
  354 S.W.2d 698 (Tex. Civ. App.—Eastland 1962, writ ref'd n.r.e.)............ 8, 9

*Siefkas v. Siefkas*,
  902 S.W.2d 72 (Tex. App.—El Paso 1995, no writ) ................................... 10

*Smith v. Green Tree Servicing, LLC*,
  No. C13-1573RSL, 2014 WL 1319821 (W.D. Wash. Mar. 28, 2014) ............. 18

*Spann v. Ewing*,
  63 Tex. 240 (1885) ....................................................................................... 10, 11

*Strauss v. Brooks*,
  148 S.W.2d 393 (Tex. 1941) ......................................................................... 8

*Thompson v. Tropical Sav. & Loan Ass'n*,
  430 S.W.2d 426 (Tex. Civ. App.—San Antonio 1968, writ ref'd n.r.e.)............ 10

*Wilson v. Bank of Am., N.A.*,
   No. 14-2498, 2014 WL 4744555 (E.D. Pa. Sept. 24, 2014)................................. 23

*Zale Corp. v. Decorama, Inc.*,
   470 S.W.2d 406 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.) ....................... 14

**RULES, STATUTES, AND CONSTITUTION**

12 U.S.C. § 1701j-3(a)(1)............................................................................... 18, 22

12 U.S.C. § 1701j-3(d)(7) .............................................................................. 18, 22

12 U.S.C. § 1701j-3(b)(3) ................................................................................... 19

TEX. FAM. CODE § 5.001 ..................................................................................... 2, 6

## STATEMENT OF THE CASE

This is a declaratory judgment case about the scope of a lender's rights when its borrower seeks to assign a mortgage loan without the consent of the lender. Appellant Robyn Jones ("Jones") is not the borrower on the mortgage loan from Wells Fargo Bank, N.A. ("Wells Fargo"). Nevertheless, she sued Wells Fargo seeking a declaration that she is "the principal debtor, and may enter into any agreement to modify the amortization terms of the Note without the Note and without the signature of Brian C. Jones [her now ex-husband who was Wells Fargo's borrower]." (CR:11.) The district court granted summary judgment to Wells Fargo, rejecting Jones's claims that were seeking to make Wells Fargo an involuntary lender. (CR:519-20.) Jones voluntarily dismissed her remaining claims. (CR:525-26.) Accordingly, the district court entered final judgment on September 11, 2014. (CR:525-26.) Jones appeals. (CR:527.)

## ISSUE PRESENTED

Did the district court err when it held as a matter of law that Jones could not force Wells Fargo to accept her as the primary obligor on a loan, with authority to negotiate changes to the amortization schedule of that loan without the consent of her now ex-husband who was the original obligor on the loan?

## STATEMENT REGARDING ORAL ARGUMENT

Wells Fargo believes this case can be resolved efficiently by submission on the briefs. However, to the extent the Court believes oral argument would be

1

useful to answer questions and conduct a dialogue regarding Jones's arguments, Wells Fargo requests the opportunity to participate.

## STATEMENT OF FACTS

While Jones was married to Brian Christopher Jones ("Brian Christopher"), Brian Christopher obtained a loan from Wells Fargo[1] to purchase property located at 467 Dandelion Loop, Kyle, Texas 78640 (the "Property"). The Loan is evidenced by a promissory note (the "Note") (CR:303-05), and secured by a deed of trust (the "Deed of Trust") (CR:312-23). Brian Christopher signed both the Note and Deed of Trust (collectively, the "Loan"). (CR:304, 319, 323.) In contrast, Jones—as non-borrowing spouse and co-owner of the Property—signed only the Deed of Trust, as required by Texas law. (*Id.*; *see* TEX. FAM. CODE § 5.001.)

In January 2005, Appellant divorced Brian Christopher. (CR:6.) An Agreed Final Decree of Divorce was signed by the Hays County district court, under which terms Jones was awarded the Property as her sole and separate property, Brian Christopher was to execute a "Special Warranty Deed with assumption clause" conveying his interest in the Property to Jones, and Jones was to execute a "Deed of Trust to Secure Assumption" for the benefit of Brian Christopher, to secure payment of the "promissory note assumed by" Jones. (CR:380, 382.) Wells Fargo

---

[1] The original lender was Universal American Mortgage Company, LLC. However, shortly thereafter, Wells Fargo became mortgagee and lender. (CR:5, 300, 305.)

2

was not a party to the divorce suit or the Agreed Final Decree of Divorce. (CR:348, 386.)

In accordance with the divorce decree, Brian Christopher executed a Special Warranty Deed conveying the Property to Jones. (CR:325-27.) Part of the stated consideration for the conveyance was Jones's "assumption of the unpaid principal and earned interest" on the Note. (*Id.*) Wells Fargo was not a party to the Special Warranty Deed. (*Id.*)

Also in accordance with the divorce decree, Jones executed a Deed of Trust to Secure Assumption, identifying Jones as "Grantor" and identifying Brian Christopher as "Beneficiary," and providing that as between such parties Jones was primarily obligated to make the Loan payments. (CR:144-49.) Wells Fargo was not a party to the Deed of Trust to Secure Assumption. (*Id.*)

In 2010, either Jones or Brian Christopher fell behind on Loan payments, and the Loan went into default. (CR:5, 341.) After receiving a notice of default in August 2010, Jones contacted Wells Fargo to discuss loss mitigation and the possibility of a loan modification. (CR:7.) However, after determining that Jones was not the borrower on the Note, and had not assumed the Loan, Wells Fargo advised her that in order to modify the Loan, she would need to either have Brian Christopher's consent or she would have to qualify to take over and assume all obligations of the Loan. (CR:301.) When Jones indicated that she was not willing

3

or able to get Brian Christopher's consent, Wells Fargo attempted to review her for an assumption of the Loan. (*Id.*) However, because her debt-to-income ratio was too high and credit score was too low, Jones did not meet the relevant underwriting standards and, accordingly, was not eligible to assume the Loan. (*Id.*)

Jones filed this lawsuit in March 2011. (CR:1-13.) Although other claims and allegations were at issue before the district court,[2] there is only one issue on appeal. Jones contends that because of the assumption agreement between her and her ex-husband Brian Christopher, her assumption of the Note is also effective between her and Wells Fargo. Wells Fargo, on the other hand, contends that an assumption of debt between a borrower and a third party is not enforceable against the lender unless and until the lender approves the assumption.

Based on their respective positions, both Jones and Wells Fargo filed motions for partial summary judgment on Jones's declaratory judgment claim. (CR:68-171; CR:286-398.) The trial court granted Wells Fargo's motion for partial summary judgment (CR:519), and denied Jones's motion for partial summary judgment (CR:520). Jones filed a Notice of Appeal. (CR:527-28.) This appeal ensued, wherein Jones asks this Court to reverse the district court's judgment on her declaratory judgment claim, and Wells Fargo asks the Court to affirm the judgment.

---

[2] Jones also asserted a claim for damages against Wells Fargo under Texas Finance Code chapter 392. (CR:12-13.)

## SUMMARY OF THE ARGUMENT

Texas law is clear—a debtor cannot obligate a lender to accept the debtor's assignment of his debt absent the lender's agreement thereto. There are many good reasons for this rule. For example, a lender should have the right to determine to whom it will extend a loan, including by checking that person's credit and history to determine if they are qualified to receive and repay the loan. If a borrower could take out a loan and then assign away his status to another as the principal obligor, this would place the lender at risk of issuing a loan to someone who is not qualified. Moreover, in a case like this one where Jones is seeking to take over obligations on the loan with the right to make changes without the consent of the original borrower, the lender would be placed further at risk that its original borrower could be discharged from his obligations without the lender's consent.

Here, Jones and her ex-husband never obtained the lender's consent to Jones becoming the principal obligator on the loan. When Jones applied to become the principal obligor on the loan, she did not qualify. Although the Deed of Trust allowed for the possibility of an assignment by the borrower, it did not strip Wells Fargo of its right to determine whether the assignment was appropriate under applicable investor and lending guidelines. There is nothing in Texas law or in the

federal Garn-St. Germain Act that deprives Wells Fargo of its rights to determine who is qualified to be the borrower and principal obligor on its loans.

**A. Under Texas Law, Jones Had No Right to Force Wells Fargo to Accept Her as the Principal Obligor on the Loan.**

Jones is not entitled to a declaratory judgment that she assumed the Note, because Wells Fargo has not agreed to Jones's assumption of the Note. While an agreement between a grantor and grantee of property for the grantee's assumption of the grantor's debt may be effective as between the grantor and grantee, this does not mean that such agreement is effective as against the lender/mortgagee.

Jones did not sign the Note. (CR:304.) Thus, as she pleaded below, Brian Christopher "was the only party personally obligated to pay the amounts secured by the Deed of Trust." (CR:6.) Jones did sign the Deed of Trust (CR:319), but did so as a non-borrowing spouse, as is required by Texas law. *See* TEX. FAM. CODE § 5.001 (providing that a spouse may not encumber the homestead without joinder of the other spouse). Indeed, the Deed of Trust expressly provides that Jones's signature on the Deed of Trust makes her a "Borrower" under the contract but does not make her personally liable on the Note:

> Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; [and] (b) is not personally obligated to pay the sums secured by this Security Instrument….

6

(CR:316.)

It is undisputed that Jones has not entered into any agreement with Wells Fargo to assume the Loan. (CR:341.) Rather, Jones contends that her assumption of the Loan became effective via various agreements with her ex-husband Brian Christopher—the Divorce Decree, the Special Warranty Deed, and the Deed of Trust to Secure Assumption. (Appellant's Br. at 8.) While these agreements may have created a contractual relationship between the parties (*i.e.* Brian Christopher and Jones) regarding the Property and the Loan, they do not create a contractual relationship between Jones and the non-party Wells Fargo, nor do they change the existing contractual relationship between Brian Christopher and Wells Fargo.[3]

As a general rule, in the context of a note and lien, a grantee's assumption of a note from the original borrower does not bind the lender if "it did not consent to the assumption of the note or take any action to recognize [the grantee] as the primary debtor." *La-Rey, Inc. v. Kowalski*, 433 S.W.2d 530, 533 (Tex. Civ. App.—San Antonio 1968, no writ). This is a longstanding rule in Texas law, as the Texas Supreme Court observed decades ago:

---

[3] In her Appellant's Brief, Jones periodically references the vicious act of domestic violence perpetrated against her by Brian Christopher, as well as his subsequent behavior regarding the Loan, including his changing mortgage account contact information and online passwords. (Appellant's Br. at 2-3, 8.) Wells Fargo should not be held responsible for the unsavory acts of Jones's ex-husband. In fact, Jones sought an injunction from the divorce court for the relief she seeks in this case—and against the proper party, Brian Christopher. (CR:391.) But the district court denied Jones's application for a permanent injunction. (CR:396.)

7

It is also well settled that contracts by one capable of contracting may be made by assumption, when such assumption is a consideration for the purchase of property. An assumption of this kind, *when accepted by the payee of the obligation assumed, or the mortgagee*, becomes a contract under which the one making the assumption becomes the principal obligor and the original maker the surety.

*Strauss v. Brooks*, 148 S.W.2d 393, 396 (Tex. 1941) (emphasis added). The Austin Court of Civil Appeals earlier reached this same holding.

In the instant case when Augusta Helge reconveyed said lands to E. V. Helge in January, 1928, who assumed the payment of the debt sued upon, *as between them*, E. V. Helge then became primarily liable thereon. *But the holder of said indebtedness was not required to accept the new obligor unless it chose to do so.*

*Helge v. Am. Cent. Life Ins. Co.*, 124 S.W.2d 191, 193 (Tex. Civ. App.—Austin 1938, writ dism'd judgm't cor.) (emphasis added). Texas federal courts also follow this rule.

In Texas, as generally elsewhere, the purchaser of property incumbered by a mortgage who assumes to pay the mortgage as part of the consideration of his purchase, *as between himself and his vendor* becomes the principal debtor and the vendor his surety; and the mortgagee *may* recognize and enforce the transaction for his own benefit.

*Pinckney v. Wylie*, 86 F.2d 541, 542 (5th Cir. 1936) (citations omitted and emphasis added).

The same conclusion was reached in *Shockey v. Page*, 354 S.W.2d 698 (Tex. Civ. App.—Eastland 1962, writ ref'd n.r.e.), in which defendants Rice and Shockey had executed a note and deed of trust, and two years later Rice and

8

Shockey conveyed the underlying property to Moore, "who assumed payment of the unpaid balance of the note." *Id.* at 699. According to the Court:

> It is undisputed that Moore assumed payment of the balance due on the note. Upon the assumption by Moore, however, Rice and Shockey did not thereby become mere sureties and they were not released from liability as principal obligors. There was no unconditional acceptance of Moore as the sole principal obligor *by the holder of the indebtedness* nor was there any agreement to release the original obligors.

*Id.* at 700 (emphasis added).

In short, the lender has no obligation to deem the purchaser of the secured property, who assumes the debt as between himself and the original borrower, to be the principal obligor on the debt unless and until the lender *agrees* to the assumption. *See Cain v. Bank United of Tex.*, No. 14-95-00601-CV, 1997 WL 428054, at *9 (Tex. App.—Houston [14th Dist.] July 31, 1997, pet. denied) ("Because Bank United [the lender] accepted Nupro's [the property buyer] agreement to assume the debt, Nupro became the party primarily liable to pay the mortgage."); *Monroe v. Salter*, No. 05-94-01560-CV, 1995 WL 447549, at *5 (Tex. App.—Dallas July 27, 1995, no writ) (holding that transfer of property did not cause plaintiffs to become "unwilling lender" to transferees because "an assumption can only take place if the holder of the note accepts or agrees to such an assumption"). The fact that an agreement between a grantor and grantee of property for the grantee's assumption of the grantor's debt is effective as between

the grantor and grantee does not establish that such agreement is also effective as against the lender/mortgagee.[4] *See Thompson v. Tropical Sav. & Loan Ass'n*, 430 S.W.2d 426, 428-29 (Tex. Civ. App.—San Antonio 1968, writ ref'd n.r.e.) (holding that principal debtor was unchanged when "assumption was never accepted or agreed to by the holder of the note").

In her Appellant's Brief, Jones cites two Texas Supreme Court cases that discuss a third party's assumption of a borrower's debt. (Appellant's Br. at 8-9.) However, neither case repudiates or even addresses the lender's right *not* to accept the third party's assumption of debt. In *Spann*, while the lender was not a party to the contract of assumption between the original debtor and the assuming third party, the lender was entitled to accept such assumption, as such contract "gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay him a debt originally due only by the person to whom the promise is made." *Spann v. Ewing*, 63 Tex. 240, 242 (1885). Likewise, in *Brannin*, the Court's consideration of a third party's assumption of debt arose in the context of the lender's assignee suing the third party on the debt. *See Brannin v. Richardson*, 185 S.W. 562, 563-64 (Tex. 1916). Neither of these cases

---

[4] For this reason, the cases cited by Jones involving an assignment of debt in the context of divorce are not relevant to the lender's ability to refuse to accept such assignment. (Appellant's Br. at 11-12.) In both cases, the lender was not a party to the lawsuit, and whether the assignment was effective *against the lender* was not at issue. *See Puntarelli v. Peterson*, 405 S.W.3d 131, 135-37 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Siefkas v. Siefkas*, 902 S.W.2d 72, 76 (Tex. App.—El Paso 1995, no writ).

10

contradicts the lender's right to *refuse* to accept an assumption of the debt. In both cases, the lender was seeking to enforce the assumption, and thus there was no reason for the Court to question whether the lender had, in fact, accepted such assumption. Accordingly, while *Spann* and *Brannin* may be relevant as to whether Wells Fargo had the *right* to accept the assumption agreement between Jones and Brian Christopher (Wells Fargo has such right), neither case is relevant as to whether Wells Fargo has the *obligation* to accept such agreement. Texas case law consistently shows that there is no such obligation.

Wells Fargo does not dispute that, as between Jones and her ex-husband, Jones assumed the Note pursuant to the Divorce Decree, the Special Warranty Deed, and the Deed of Trust to Secure Assumption. But unless and until Wells Fargo approves the assumption, Jones cannot require Wells Fargo to provide her any rights that belong only to the principal obligor of the debt, Brian Christopher.[5]

## B. The Deed of Trust Does Not Compel Wells Fargo to Approve an Assumption.

Jones argues that the general rule in Texas that the lender is not obligated to accept a borrower's assumption agreement is somehow altered in this case by the language of the Deed of Trust. (Appellant's Br. at 10-13.) The Deed of Trust in this case does not support Jones's argument.

---

[5]   This status is not without benefit to Jones. While as the Property owner she may have the option to redeem the lien on the Property, she is also free to walk away from the Note without any personal liability to the lender for it, if she chooses to do so.

11

The provision of the Deed of Trust at issue is in Paragraph 12, which states: "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower…." (CR:316.) While this provision contemplates that the Borrower *may* have a successor or assign, it does not govern how a successor or assign arises. Wells Fargo does not dispute that the Deed of Trust is assignable as a general matter; however, Wells Fargo's consent remains a prerequisite to an assignment by the Borrower. No provision of the Deed of Trust provides that Brian Christopher could assign the Deed of Trust without Wells Fargo's agreement. By its plain language, the only principle that arises from the Paragraph 12 provision is that *if* the Borrower's rights are assigned, the Deed of Trust's covenants and agreements shall bind and benefit the Borrower's assignee. There is no express or implied modification of the general rules regarding how a borrower's rights can be assigned.

In fact, Jones's argument has been foreclosed by this Court's opinion in *In re FH Partners, L.L.C.*, 335 S.W.3d 752 (Tex. App.—Austin 2011, orig. proceeding). In that case, the borrowers argued that their consent was required in order for the lender to assign the loan to the plaintiff. *See id.* at 761. This Court disagreed, explaining that the assignment by a lender is subject to the "longstanding rule in Texas that the right to collect a debt … is generally assignable." *Id.*

12

This Court further observed that there is a "long-recognized exception" when a contract relies on the credit of the parties. In such a case, the general policy of free assignment yields to a contracting person's interest to require performance only by a specific person. *Id.* at 762. As the Court explained:

> Texas courts have long held that a debtor cannot assign an extension of credit or delegate its duty to pay a creditor without the creditor's consent. This reflects a view that a creditor's agreement to extend credit inherently contemplates a specific debtor and that the creditor should not be effectively forced to extend credit to a different debtor without the creditor's consent.

*Id.* at 763 (citations omitted). The borrowers in *FH Partners* then argued that the same rule applicable to an assignment by a borrower should apply equally to an assignment by lender. *See id.* at 763-64. This Court flatly disagreed. According to this Court, neither the "personal trust or credit" exception nor its rationale extends to a creditor's assignment of its right to receive payment from a debtor. *Id.* at 764. This distinction does not turn on a particular party's trust or reliance, but on the type of rights conveyed. *Id.* at 765. The right to *collect* a debt is "quintessentially among the types of rights that Texas law deems freely assignable." *Id.* at 766. The obligation to *pay* a debt, on the other hand, clearly falls within the "personal trust or credit" exception to the rule of free assignability. *Id.* at 762-63.

In short, a lender need not obtain the borrower's consent to assign its rights and obligations, but the borrower must obtain the lender's consent to assign his

13

rights and obligations. Therefore, absent language to the contrary in the Deed of Trust, Brian Christopher could not assign his debt to Jones without Wells Fargo's consent. Paragraph 12 of the Deed of Trust contemplates that a borrower's assignee may exist, but does not contemplate that Wells Fargo's consent is unnecessary in order for such assignment to take place. The Deed of Trust is silent regarding whether consent is necessary for either party to assign the debt. Thus, the common law rule is unaltered: Wells Fargo's consent is necessary.

None of the cases relied on by Jones contradicts this straightforward application of *FH Partners*. In *Zale Corp. v. Decorama, Inc.*, 470 S.W.2d 406 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.), one contract at issue specified that "Tenant may without consent of the Landlord assign this lease," thereby enabling the Court to hold that the landlord's consent was not required for the tenant to assign his rights under the second contract executed contemporaneously. *Id.* at 408-09. Unlike in *Zale Corp.*, there is no contract provision in this case removing the requirement of lender consent for the borrower to assign any rights or obligations.

In *Romund v. Ginzel*, 259 S.W.2d 619 (Tex. Civ. App.—Waco 1953, no writ), the Court concluded that under the specific circumstances of the case the "personal trust or credit" exception did not apply. *Id.* at 621. Unlike in *Romund*, this case involves an existing debt and attempted transfer of that debt by the

14

borrower, and thus it cannot be reasonably contended that the "personal trust or credit" exception is inapplicable.

In *Cronin v. Wells Fargo Bank, N.A.*, No. 03-12-00799-CV, 2014 WL 2918006 (Tex App.—Austin June 19, 2014, no pet.) (mem. op.), this Court held that the deed of trust provision that its covenants and agreements "bind and benefit the successors and assigns" unambiguously expressed the parties' intent to allow the original lender to assign the deed of trust. *See id.* at *7. Jones extrapolates from *Cronin*'s holding that the same rule should apply to a borrower, but in doing so, Jones ignores the clear distinction—explained and applied by this Court in *FH Partners*—between a lender's and a borrower's authority to assign a loan. (Appellant's Br. at 10-11.) Because a lender can assign its rights without borrower consent, the provision in the deed of trust indicating that assignment may occur, while confirming that assignment is possible, did nothing to change the status quo that consent was unnecessary. In the same way, because a borrower cannot assign its rights without lender consent, a provision in the deed of trust indicating that assignment may occur, while confirming that assignment is possible, does nothing to change the status quo that consent is necessary. This Court in *Cronin* did not address this latter circumstance, and its analysis in *Cronin* should not be interpreted to upset the clear distinction outlined in *FH Partners*.

Appellant lastly cites *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78 (Tex. App.—Amarillo 1994, writ denied), for the proposition that a *successor* to the borrower obtains the benefits of the borrower under the deed of trust. As an initial matter, *Howell* deals with the deceased borrower's estate. Whether a borrower's estate qualifies as the borrower's "successor" has no evident bearing on Jones's status. *See, e.g.*, *DTND Sierra Invs. LLC v. CitiMortgage, Inc.*, No. SA-12-CV-80-XR, 2012 WL 1711738, at *10 (W.D. Tex. May 15, 2012) ("[A] purchaser in a sale without credit approval would not appear to be a successor bound by or entitled to the benefits of the Deed of Trust."). This lawsuit does not involve an estate or the administrator of an estate, and there is no legal basis for Jones to qualify as Brian Christopher's "successor."

Moreover, even if Jones could be deemed a "successor" of her ex-husband Brian Christopher, it does not follow that Jones has assumed the Note and become the principal obligor. *See, e.g.*, *Preston v. Seterus*, 931 F. Supp. 743, 759 n.8 (N.D. Tex. 2013) (quoting deed of trust language that party who is successor to borrower need not have assumed debt).[6] This distinction is evident in the very opinion cited by Jones. In *Howell*, where the deed of trust provided that its covenants and

---

[6] *See also Ashby v. Wells Fargo Bank, N.A.*, No. 12-803, 2012 WL 1833932, at *2 (S.D. Tex. May 18, 2012) ("Plaintiff is not the borrower. He is not a party to the Promissory Note or the Deed of Trust. Although Plaintiff alleges that he inherited the property when his parents died, there is no allegation or evidence that he requested or obtained Wells Fargo's written consent to assume the loan or that he has been substituted in Wells Fargo's records as a party to the Promissory Note or Deed of Trust.").

agreements inured to the borrower's successors, even though the Court concluded that the estate was *successor* to the borrower, the Court's conclusion did not impair the rule "that the debt would not be *assumable* without the lender's consent." *See Howell*, 890 S.W.2d at 83-84 (emphasis added). Specifically, the Court noted that while a probate court could order a sale of property subject to indebtedness, the probate code "does not empower the court to require a creditor to make a loan, extend a loan or make a loan assumable." *Id.* at 81. In the same way, while the divorce court could order the transfer of the Property to Jones subject to the Loan, the divorce court could not—and did not—require Wells Fargo to consent to an assignment or assumption of the Loan.

Jones is a "Borrower" under the Deed of Trust as a signatory thereof, but her rights and obligations are limited (as shown in Paragraph 12) because she did not also sign the Note and thereby become a principal obligor. Under Texas law, absent contractual language to the contrary, a principal-obligor status cannot be assigned to or assumed by another "Borrower" without the lender's consent. The Deed of Trust contains no contractual language that would modify this rule.

C. **Wells Fargo's Right to Accept or Reject an Assumption of the Debt By Jones Is Not Impaired by the Federal Garn-St. Germain Act.**

Jones also claims that Wells Fargo's right to decline to accept Jones's assumption of the debt is preempted by the Garn-St. Germain Depository

17

Institutions Act of 1982. (Appellant's Br. at 13-14.) The plain language of the Garn-St. Germain Act shows otherwise.

Under the Garn-St. Germain Act, a lender cannot exercise a deed of trust's due-on-sale clause (i.e. accelerate the debt) as a result of the transfer by divorce decree of "any part of the property, or an interest therein, securing the real property loan." *See* 12 U.S.C. § 1701j-3(a)(1), (d)(7). But that undisputedly has not occurred here. Any attempt to accelerate the Loan by Wells Fargo would be due to the default on the Loan starting in 2010, not the transfer of the Property back when Jones got divorced in 2005.[7] *See Smith v. Green Tree Servicing, LLC*, No. C13-1573RSL, 2014 WL 1319821, at *2 (W.D. Wash. Mar. 28, 2014) (holding that Garn St. Germain Act did not apply when borrower's spouse obtained property through divorce and five years later defaulted by non-payment).

This provision of the Garn-St. Germain Act restricts the lender's right to accelerate the debt. But no provision of the Act restricts the lender's right to reject an assumption of the debt. In fact, the Garn-St. Germain Act expressly references assumption, but only to state that "a lender is encouraged to permit an assumption

---

[7] In fact, when the property transfer occurred in 2005, Wells Fargo alerted Jones that the debt would be accelerated as a result of the property transfer with Wells Fargo's consent. (CR:150.) However, Jones informed Wells Fargo that the property transfer was in accordance with a divorce decree. (CR:151.) Wells Fargo, then, in compliance with the Garn-St. Germain Act, withdrew its intent to accelerate. (CR:300.) Interestingly, Wells Fargo's 2005 letter also explained to Jones at that time that no assumption had taken place, and any assumption of the debt would require satisfaction of "investor guidelines for a credit qualifying assumption." (CR:150.)

18

of a real property loan." *See* 12 U.S.C. § 1701j-3(b)(3). Encouraging a lender to agree to an assumption simply does not equate to prohibiting a lender from rejecting an assumption. Thus, by its plain language, the Garn-St. Germain Act does not limit in any way the lender's discretion regarding whether to accept a third party's assumption of the debt from the borrower.

In order to equate the rejection of an assumption of debt with the acceleration of the debt, Jones relies not on the plain language of the statute or any Texas legal authority, but on a single Florida federal bankruptcy case. In *In re Jordan*, 199 B.R. 68 (Bankr. S.D. Fla. 1996), a Florida bankruptcy court judge compelled a lender to approve a property transferee's assumption of debt. In that case, the borrower had defaulted, the lender accelerated the debt and obtained a final judgment of foreclosure, and the borrower filed for bankruptcy but had her case dismissed with prejudice. *Id.* at 69. Undaunted, the borrower transferred a half interest in her property to her son, and the son filed for chapter 13 bankruptcy. *See id.* The Florida bankruptcy judge proceeded to hold not only that the mother's mortgage default would be cured by the court's bankruptcy plan, but also that the lender was compelled to accept the son's assumption of the mortgage. *See id.* at 69-70.

The analysis employed by the judge to reach his conclusion is not persuasive. First, the judge cited federal bankruptcy case law to the effect that a

19

mortgagee's lien is a "claim" against the property owner under the bankruptcy code. *Id.* at 69. However, these cases do not support the stripping of a lender's right to reject an assumption, because the bankruptcy code does not require an assumption of the underlying debt for a lien on the debtor's property to be a "claim." *See In re Cady*, 440 B.R. 16, 22 (N.D.N.Y. 2010) (despite the fact that "the debtor never formally assumed the mortgage," for purposes of "claim" under bankruptcy code "it is sufficient that a debtor owns property against which a creditor holds a lien"); *In re Lumpkin*, 144 B.R. 240, 241-42 (Bankr. D. Conn. 1992) (finding loan to be "claim" under bankruptcy code despite debtor "not being the maker of the mortgage note and not having assumed the mortgage"). Whether the Deed of Trust could be a "claim" under the bankruptcy code is irrelevant to Wells Fargo's ability to accept or reject Jones's attempted assumption of the underlying debt.

Second, the judge in *Jordan* cited two Florida Supreme Court cases for the proposition that a grantee who purchases mortgaged land from the mortgagor and assumes and agrees to pay the mortgage becomes the principal debtor and the original mortgagor a surety. *Id.* at 70 (citing *Marler v. Parker*, 135 So. 400 (Fla. 1931), and *Proctor v. Hearne*, 131 So. 173 (Fla. 1930)). Neither case overturns the lender's right to reject an assumption of debt. On the contrary, both cases agree with Texas law that an assumption of debt is not enforceable against the lender

until the lender approves the assumption.  The Florida Supreme Court stated the following in the *Marler* case:

> It would seem to be also conceded that the relation of each of said successive persons agreeing with their immediate grantors to assume and pay said mortgage became, by virtue of said agreements, that of principal debtors thereon *upon said mortgagee's acceptance of the benefit derivable to it by their said several agreements*.

*Marler*, 135 So. at 401 (emphasis added).  The Florida Supreme Court was equally explicit in the *Proctor* case:

> For one reason or another, the courts are gradually uniting upon the doctrine, which we here adopt, that the relation of principal and surety between the mortgagor and his grantee, created in the manner above stated, does not in and of itself involve the mortgagee in its legal effects.  His rights remain unchanged, unless by his voluntary agreement, or by his dealings with the grantee, the mortgagee in effect accepts the grantee alone as the principal debtor or estops himself to further assert a personal liability against the mortgagor.

*Proctor*, 131 So. at 176.  Thus, neither the bankruptcy code nor Florida law supported the bankruptcy judge's ultimate conclusion that the lender could not withhold consent to the son's assumption of his mother's debt.

To reach such conclusion, then, the judge in *Jordan* relied solely on the Garn-St. Germain Act.  Certainly such Act prevents a lender from enforcing a "due-on-sale clause" due to the transfer of property to the borrower's spouse or children.  However, the judge did not—and could not—cite to any legal authority for his bare conclusion that a lender's right to reject an assumption "should be

21

equated with a due on sale clause." *Jordan*, 199 B.R. at 70. The judge relied on neither the plain language of the federal statute nor any state or federal case law.

The Garn-St. Germain Act expressly defines a "due-on-sale clause" as "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. § 1701j-3(a)(1). And yet a lender's right to accelerate the debt upon a transfer of the property is hardly comparable to a lender's right to choose its borrower. The former involves the transfer of secured property; the latter involves the transfer of debt. The former concerns only the lender's immediate rights; the latter impacts the life of the loan. The former prohibits action by the lender (acceleration of the debt); the latter compels action by the lender (acceptance of the assumption). Applying the statute's actual language maintains the status quo (the lender cannot accelerate the debt); applying the bankruptcy judge's conclusion disrupts the status quo (a new debtor is forced upon the lender). Accordingly, the fact that, upon the sale of the property, a secured lender is *prohibited* from accelerating the debt does not—and should not—also mean the lender is *required* to accept the purchaser's assumption of the debt. *See* 12 U.S.C. § 1701j-3(a)(1), (d)(7).

This Court should not follow the unprecedented, unsupported conclusion of the Florida bankruptcy judge in *Jordan*. No other court has made the same extension of law. *See, e.g.*, *Wilson v. Bank of Am., N.A.*, No. 14-2498, 2014 WL 4744555, at *8 (E.D. Pa. Sept. 24, 2014) (deeming the Garn-St. Germain Act to be "irrelevant" as to whether the transferee of real property has assumed the mortgage pursuant to the lender's credit standards); *In re Henderson*, No. 04-B-75636, 2005 Bankr. LEXIS 1474, at *10 (Bankr. N.D. Ill. May 17, 2005) (holding that Garn St. Germain Act did not modify creditor's rights with respect to debtor who was not party to mortgage). Certainly no Texas federal or state court has ever reached the same conclusion. At best, the Florida bankruptcy judge's discussion of the Garn-St. Germain Act was dicta, since the judge could have confirmed the bankruptcy plan based on the lien being a "claim" and no assumption being a requirement for such purpose.[8] This Court, therefore, should follow the plain language of the Act, which prohibits acceleration in certain circumstances *not applicable here* and, regarding assumption of debt, states only that the lender's agreement thereto is "encouraged."

---

[8] It is also possible that the judge in *Jordan* simply misunderstood what was at issue. A deed of trust often states, as in this case, that "approval of the Secretary" is required for acceleration of debt upon a transfer of the property when the transferee's credit has not been approved pursuant to "the requirements of the Secretary." (CR:316.) The bankruptcy judge appeared to equate—and unnecessarily so—the Secretary's involvement with acceleration of debt upon property transfer (which can implicate the Garn-St. Germain Act) with the Secretary's involvement with credit review for purposes of assumption of debt (which does not implicate the Garn-St. Germain Act). *See Jordan*, 199 B.R. at 70.

23

The Garn St. Germain Act does not require Wells Fargo to agree to Jones's assumption of the Loan. Absent any legal authority that would *require* Wells Fargo to agree to Jones's assumption of the debt, then, Jones cannot obtain a declaration from the Court *compelling* Wells Fargo to accept or agree to Jones's assumption of the debt.

## CONCLUSION AND PRAYER

As demonstrated, Texas law is clear that an assumption of debt is not valid as against the lender until the lender accepts or agrees to the assumption. Neither the language of the deed of trust in this case nor the provisions of the Garn St. Germain Act create an exception to this rule. Thus, Wells Fargo is not bound by—nor compelled to accept or consent to—Jones's agreement with Brian Christopher for the assignment or assumption of the debt owed to Wells Fargo. The district court correctly found that Jones is not entitled to a declaration against Wells Fargo that she assumed the Note, she is the principal debtor, and/or she may enter into an agreement to modify the amortization terms of the Note without Brian Christopher's signature. The district court's judgment in favor of Wells Fargo should be affirmed.

24

Respectfully submitted,

**LOCKE LORD LLP**

By: */s/ W. Scott Hastings*

B. David L. Foster
  dfoster@lockelord.com
  State Bar No. 24031555
600 Congress Avenue, Suite 2200
Austin, Texas  78701
Telephone:  (512) 305-4700
Facsimile:  (512) 305-4800

W. Scott Hastings
  shastings@lockelord.com
  State Bar No. 24002241
Robert T. Mowrey
  rmowrey@lockelord.com
  State Bar No. 14607500
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800

*Counsel for Appellee Wells Fargo Bank, N.A.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies that this Brief complies with the length limitations of Rule 9.4(i) and the typeface requirements of Rule 9.4(e).

1.      Exclusive of the contents excluded by Rule 9.4(i)(1), this Brief contains 6,311 words as counted by the Word Count function (including textboxes, footnotes, and endnotes) of Microsoft Office Word 2010.

2.      This Brief has been prepared in proportionally spaced typeface using:

Software Name and Version:  Microsoft Office Word 2010

Typeface Name:  Times New Roman

Font Size:  14 point

*/s/ W. Scott Hastings*
W. Scott Hastings

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2015, a true and correct copy of this Brief is served by e-service through efile.txcourts.gov on Appellant through her counsel of record listed below:

Doug W. Ray
Ray & Wood
2700 Bee Caves Road
Austin, Texas  78746

*/s/ W. Scott Hastings*
W. Scott Hastings